UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB L. EDE,<br><br>     Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>     Defendants. | Case No. 1:22-cv-00052-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 12). |

    This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for Supplemental Security Income. (ECF No. 1). The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 7, 9, 10).

    Plaintiff challenges the ALJ's finding that "[P]laintiff is capable of performing only two occupations: Counter Clerk, representing 102,000 jobs, and Furniture Rental Clerk, representing 98,000 jobs in the national economy." (ECF No. 12, p. 4). Plaintiff argues that the ALJ erred by failing to identify a significant number of Counter Clerk—photofinishing jobs in the national economy. (*Id.* at 6). Plaintiff also argues that the ALJ erred in determining that Plaintiff could perform the job of a Furniture Retail Clerk despite Plaintiff's limitations. (*Id.* at 11).

Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

## I. DISCUSSION

### A. Whether the ALJ erred by failing to identify a significant number of jobs

Plaintiff first challenges the ALJ's decision by arguing that the ALJ failed to resolve inconsistencies between the job number estimate for the Counter Clerk—photofinishing position provided by the VE and more recent data available to the ALJ from administratively noticed sources. Plaintiff also argues that evidence submitted to the Appeals Council establishes further discrepancies with the jobs figure relied on by the ALJ. As a result, Plaintiff argues that the ALJ failed to identify a significant number of industry designated Counter Clerk—photofinishing positions in the national economy.[1]

At step five, the ALJ must determine whether there are jobs available for the claimant in the national economy considering the claimant's age, education, work experience, and residual functional capacity. *See* 20 C.F.R. § 416.920(a)(4)(v). Specifically, the burden shifts to the agency to prove that "the claimant can perform a significant number of other jobs in the national economy." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). To meet this burden, the ALJ may consider testimony from a vocational expert, or the Medical-Vocational Guidelines. *See White v. Kijakazi*, 44 F.4th 828, 833 (9th Cir. 2022) (citing 20 C.F.R. § 416.960(c)(2)). Regarding

---

[1] The Commissioner argues that Plaintiff forfeited this issue by not challenging the VE's testimony regarding the job numbers during the administrative hearing before raising the issue for the first time with the Appeals Council. (ECF No. 13, p. 7-9). In contrast, Plaintiff argues that Plaintiff preserved the issue because the Appeals Council considered Plaintiff's legal argument and rebuttal evidence regarding the job number estimates, and thus, established that Plaintiff had "good cause" for not submitting rebuttal evidence during the administrative hearing. (ECF No. 16, p. 2-4). The Court finds that Plaintiff preserved his right to challenge the VE's testimony regarding job numbers. Here, Plaintiff presented evidence challenging the VE's job estimates to the Appeals Council. (A.R. 313-329). Although Plaintiff had not raised the issue before the ALJ, the Appeals Council "considered" the evidence submitted by Plaintiff and included the vocational evidence as part of the administrative record. (A.R. 3, 6). Accordingly, the Appeals Council found that Plaintiff had shown "good cause" in not raising the issue before the ALJ. *See White v. Kijakazi*, 44 F.4th 828, 836-7 ("A disability claimant has the right to submit evidence to the Appeals Council that was not submitted to the ALJ, provided there is 'good cause' for having not submitted the evidence earlier. We interpret the statement in the Appeals Council's order that is had 'consider[ed] [claimant's] reasons and has made his additional evidence 'part of the record' as indicating that [claimant] has shown 'good cause' under [20 C.F.R.] § 404.970(b) in not having introduced it in the hearing before the ALJ."). The Court further concludes that by presenting the issue before the Appeals Council, and thus during administrative proceedings, Plaintiff preserved his right to challenge the VE's testimony regarding the job numbers. *See id.* at 835 ("Social security disability claimants must raise challenges to the accuracy of a VE's job-number estimates 'at some point during administrative proceedings to preserve the challenge on appeal in federal district court.'") (quoting *Shaibi v. Beryhill*, 883 F.3d 1102, 1103 (9th Cir. 2017).

vocational expert testimony, "VEs may use a wide range of data sources and methodologies to generate job-number estimates." *Id.* at 834. However, "ALJs must inquire about, and VEs must explain, any inconsistencies between their testimony and the DOT, a principal source of occupational information for SSA." *Id.* The Ninth Circuit has acknowledged certain criticisms of the Social Security Administration's continued reliance on the DOT job estimates. *Id.* at 835 ("Namely, the DOT does not provide statistical information for its job codes; instead, VEs must imperfectly cross-reference the codes with other occupational data sources."). Further,

> Despite the outdated DOT system upon which the SSA allows VEs to rely, we have characterized uncontradicted VE job-numbers testimony as "inherently reliable" and "ordinarily sufficient by itself to support an ALJ's step-five finding." *Ford*, 950 F.3d at 1160 (first quoting *Buck*, 869 F.3d at 1051); *see also Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1192–93 (9th Cir. 2022). However, a VE may "offer testimony that is so feeble, or contradicted, that it would fail to clear the substantial-evidence bar." *Biestek*, 139 S. Ct. at 1155–56. The substantial evidence inquiry for VE testimony must proceed on a "case-by-case" basis, taking "into account all features of vocational expert's testimony, as well as the rest of the administrative record." *Id.* at 1157.

*Id*.

The Court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004); *Coleman v. Saul,* 979 F.3d 751, 755 (9th Cir. 2020) ("Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

Here, the ALJ found that Plaintiff was unable to perform any past relevant work. (A.R. 26) ("The vocational expert testified that given the claimant's functional limitations, the claimant could not perform any past relevant work. The undersigned accepts the testimony of the vocational expert."). The ALJ also found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*)

In making this determination, the ALJ relied on the testimony of the VE that Plaintiff could perform the positions of Counter Clerk and Furniture Rental Clerk, which had significant jobs available in the national economy:

3

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative light exertion, unskilled, SVP 2 occupations such as a counter clerk (DOT 249.366-010) with approximately 102,000 jobs existing in the national economy; and a furniture rental clerk (DOT 295.357-018) with approximately 98,000 jobs existing in the national economy (HT).
>
> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT) and associated journals with any exceptions notably based on the expert's years of professional experience, training, and expertise as attested to by the expert during the hearing (see 15E; HT). Accordingly, the undersigned accepts the testimony of the vocational expert in its entirety.

(A.R. 27). Notably, as discussed further below, the DOT number provided by the VE in support of the Counter Clerk position actually corresponds to the industry designated Counter Clerk—photofinishing position. *See* DOT 249.366-010 (G.P.O.), 1991 WL 672323.

Plaintiff does not challenge the ALJ's finding that 102,000 job positions is a significant number. Rather, Plaintiff argues this finding is inaccurate, citing to the County Business Patterns ("CBP"), which indicates there are only 4,659 individuals employed in the national photofinishing industry which means that "only a very small percentage could be classified as Counter Clerks." (ECF No. 12, p. 8-10). Further, Plaintiff argues that the evidence submitted to the Appeals Council indicates that the Counter Clerk—photofinishing position is an obsolete occupation that differs significantly from a general Counter Clerk position in a non-specific industry. (*Id.* at 7-8). Plaintiff additionally argues that the VE made a material omission by omitting the industry designation when testifying about the Counter Clerk—photofinishing position, which created a conflict between her testimony and the DOT that the ALJ was required to resolve in the ALJ's written decision. (ECF No. 16, p. 5-6). In contrast, the Commissioner argues that the ALJ is not required to *sua sponte* resolve conflicts between VE testimony and other data sources. (ECF No. 15 at 9-12).

At the hearing, the ALJ asked the VE whether there were other jobs in the national economy an individual matching Plaintiff's RFC could perform. The VE testified as follows:

> I have two jobs that would match the hypothetical. . .The first a counter clerk. The DOT code is 249.366-010. It has an SVP:2, it is unskilled and it is light. In the United States there are approximately 102,000 positions. The second example is a furniture rental clerk. The DOT code is 295.357-018. It has an SVP: 2 and it is light. In the United States there are approximately 98,000 positions.

(A.R. 55). The ALJ also asked the VE whether their testimony was consistent with the DOT. *Id.* The VE stated that "the DOT does not address absences or time off task[s] […] nor does it address handling and fingering or feeling unilaterally, only bilaterally. Additionally, it does not parse out stairs versus ladders when addressing climbing. So my testimony in those areas is based on my experience and training." (*Id.*)

The Court finds that the record regarding available jobs is sufficiently unclear to warrant remand. Again, the VE's statement was ambiguous in that the VE identified the relevant job as "Counter Clerk," but provided a code for the Counter Clerk—photofinishing position. It is not clear if Plaintiff can perform a general Counter Clerk job, or if the numbers given refer to a Counter Clerk or Counter Clerk—photofinishing job. Additionally, Plaintiff submitted data from the U.S. Bureau of Labor Statistics indicating that the total number of Counter Clerk—photofinishing jobs in the national economy ranged between 4,549 and 5,581 during the second quarter of 2020. (A.R. 316). These numbers suggest that the 102,000 number may not be accurate for the Counter Clerk—photofinishing position. Further, Plaintiff submitted evidence, based in part on data taken from SkillTRAN, Job Browser Pro software, that indicates the Counter Clerk—photofinishing position "is no longer present in the U.S. labor market as a stand-alone job in any measurable way." (A.R. 328). Moreover, according to Plaintiff, this vocational evidence relies on the same data and DOT codes presumably used by the VE.

The difference between 102,000 and even the highest figure presented by Plaintiff (5,581), is significant. *See White*, 44 F.4th at 837 (claimant's job estimate of 4,290 total positions across three jobs posed a significant conflict with VE's job estimate of 160,000 total positions); *Buck v. Berryhill*, 869 F.3d 1040, 1051-52 ("In this case, the vast discrepancy between the VE's job numbers [600,000, 8,300, and 235,000 nationally] and those tendered by [claimant] [231, 2039, 26 nationally], presumably from the same source, is simply too striking to be ignored.").

Accordingly, the Court finds that remand is appropriate to allow the ALJ to address the vocational evidence submitted by Plaintiff and resolve the inconsistency between the job estimates provided by Plaintiff and the VE. In particular, the ALJ shall clarify if the relevant job is Counter Clerk, or Counter Clerk—photofinishing, whether Plaintiff can perform such job, and whether such jobs exist in significant numbers in the national economy.

**B. Whether the ALJ erred by finding that Plaintiff could perform the work of a Furniture Rental Clerk given the ALJ's findings regarding Plaintiff's limitations**

Plaintiff also challenges the ALJ's determination that, based on the limitations identified in Plaintiff' RFC, that Plaintiff was capable of performing the job of a Furniture Rental Clerk. (ECF No. 12, p. 11- 13). Specifically, the ALJ found that Plaintiff was capable of "simple, routine, and repetitive tasks in low stress jobs." (A.R. 21). Plaintiff argues that the ALJ's step-five assessment conflicts with those findings because the Furniture Rental Clerk position requires Level 3 reasoning.

The ALJ assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the individual can frequently balance; occasionally climb stairs or ramps, crouch, crawl, stoop, kneel, and bend; and never climb ladders, ropes, or scaffolds. The individual can occasionally handle, finger and feel with the right upper extremity. The individual has no limitation in reaching or the use of his left upper extremity. The individual should avoid exposure to unprotected heights, dangerous or moving machinery, machine parts, and extreme cold. The individual is capable of simple, routine, and repetitive tasks in low stress jobs which are jobs that are defined as goal oriented and which do not have an assembly line, piece work, or numerical production quota pace, a job in which the individual is limited to occasional decision making, occasional changes of workplace setting, and occasional changes to workplace routine.

(A.R. 21-22). The VE testified that an individual with the same RFC as Plaintiff could perform the job of a Furniture Rental Clerk (DOT 295.357-018). (*See e.g.*, A.R. 27). The ALJ "determined that the [VE's] testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT)." (A.R. 27).

The DOT provides that the job of a furniture rental clerk requires Level 3 reasoning, which the DOT defines as ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems

6

involving several concrete variables in or from standardized situations." DOT 295.357-018, 1991 WL 672589.

The Court finds that the ALJ erred in determining that Plaintiff could perform the job of a Furniture Rental Clerk given her limitations in the RFC. *See Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) ("[W]e join the Tenth Circuit [in *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005)] and hold that there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning, We find the conflict to be plain when we consider, side-by-side, the definitions of Level 2 and Level 3 Reasoning."); *see also Cochrane v. Berryhill*, 260 F.Supp.3d 1317, 1336 (D. Ore. May 18, 2017) (ALJ's finding that claimant be limited to unskilled, repetitive, routine work inconsistent with the Level 3 reasoning required by furniture-rental clerk position). Again, the RFC limited Plaintiff to "simple, routine, and repetitive tasks in low stress jobs which are jobs that are defined as goal oriented and . . . which the individual is limited to occasional decision making, occasional changes of workplace setting, and occasional changes to workplace routine,"(A.R. 21-22), but the Furniture Retail Clerk Position requires Level 3 reasoning, i.e., the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations," DOT 295.357-018.

The Commissioner does not dispute this fact. Instead, the Commissioner only posits that, "[a]ssuming, *arguendo*, that *Zavalin* warrants the exclusion of the furniture rental clerk jobs, substantial evidence still supports the ALJ's step five finding because Plaintiff could still perform the counter clerk jobs that the VE identified, which require only Reasoning Level 2." (ECF No. 15, p. 6). However, because the Court has concluded that remand is appropriate regarding the ALJ's step-five finding that a significant number of Counter Clerk—photofinishing jobs exist in the economy, the Court cannot conclude that the ALJ's error regarding the Furniture Rental Clerk position was harmless. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (an ALJ's error is harmless "when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination") (internal quotation marks and citations omitted).

\\\

**II.     CONCLUSION AND ORDER**

Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further administrative proceedings consistent with this decision. On remand, the ALJ shall clarify if the relevant job is Counter Clerk, or Counter Clerk—photofinishing, whether Plaintiff can perform such job, and whether such jobs exist in significant numbers in the national economy.

The Clerk is instructed to enter judgment in favor of Plaintiff.

IT IS SO ORDERED.

Dated:    **February 10, 2023**                    /s/ Erica P. Grosjean
                                                                  UNITED STATES MAGISTRATE JUDGE